# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

NICHOLOS BARNES,

                Plaintiff,

    v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

                Defendant.

CASE NO. 16-6041-BHS

**REPORT AND RECOMMENDATION**

Nicholos Barnes appeals the ALJ's decision finding him not disabled. The ALJ found Mr. Barnes has severe impairments of obesity, degenerative disc disease of the lumbar spine, status post discectomy and laminectomy, and depression; that Mr. Barnes has the residual functional capacity ("RFC"), to perform light work with additional limitations; and that he cannot perform past relevant work but is not disabled because he can perform other work in the national economy. Tr. 11-20. The ALJ's decision is the Commissioner's final decision because the Appeals Council denied review. Tr. 1.

Mr. Barnes contends the ALJ erred by: (1) failing to find urinary incontinence and lumbar radiculopathy are severe impairments; and (2) misevaluating his testimony and the opinions of his treating doctor Robert Lang, M.D. Dkt. 11 at 1. The Court recommends

REPORT AND RECOMMENDATION - 1

**REVERSING** the Commissioner's final decision and **REMANDING** the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## DISCUSSION

**A.        The ALJ's Step Two Determinations**

Mr. Barnes contends the ALJ erred by not finding urinary incontinence and lumbar radiculopathy are severe impairments at step two. Dkt. 11 at 2-3. At step two, Mr. Barnes has the burden of showing these conditions are: (1) medically determinable impairments, (2) severe, and (3) expected to last not less than 12 months. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. § 404.1520(a)(4)(ii). To be medically determinable, a physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. § 404.1508. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c), 404.1521(a).

### *1.        Urinary incontinence*

Between April and October 2014, Mr. Barnes' doctors noted he had abnormal bladder control and diagnosed urinary incontinence. Tr. 384, 387-91, 664, 667. Mr. Barnes argues the ALJ erred by failing to recognize urinary incontinence as a severe impairment, and to evaluate its impact on his ability to work. Dkt. 11 at 4. The Commissioner defends the ALJ arguing urinary incontinence is not a medically determinable impairment because the diagnosis is based upon Mr. Barnes' subjective statements. Dkt. 122 at 2. As such, the Commissioner contends the ALJ reasonably declined to find the condition is a severe impairment. *Id.*

The ALJ did not mention urinary incontinence. The Court accordingly rejects the Commissioner's contention as an improper post-hoc rationalization that the Court cannot rely upon to affirm the ALJ. *See Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001); *Bray v.*

*Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 1995) ( Court reviews the ALJ's decision "based on the reasoning and findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

However, although the ALJ erred in failing to address urinary incontinence, Mr. Barnes has not shown the ALJ harmfully erred. This is because he has not shown the condition meets the 12 month duration requirement, and that the condition is "severe." The record notes incontinence for a six month period―far below the minimum 12 months required. Additionally, the medical record describes Mr. Barnes' incontinence as creating "some urgency but at other times not much." Tr. 664. The medical record thus does not describe a condition that significantly limits Mr. Barnes' ability to perform work; it also does not support the argument Mr. Barnes makes in his opening brief that he needs frequent breaks and has "uncontrollable wetting of clothes at work." Dkt. 11 at 4. The Court accordingly finds the ALJ committed harmless error in failing to discuss urinary incontinence.

### 2. *Lumbar radiculopathy radiating into the legs*

Mr. Barnes argues the ALJ erred in failing to find lumbar radiculopathy radiating into the legs is a severe impairment and failing to evaluate its impact on his ability to work. Dkt. 11 at 5-6. The Commissioner contends that even if the ALJ erred in failing to find the impairment is severe, the error is harmless because the ALJ discussed the impairment in reviewing the medical evidence. Dkt. 12 at 3. The record supports the Commissioner's position. It shows the ALJ found Mr. Barnes claimed "radiating pain into his leg that interfered with his range of motion." Tr. 15. The ALJ rejected the claim on the grounds Mr. Barnes could perform toe and heel walking and has full strength. Tr. 15. The ALJ also noted EMG studies suggested "radiculopathy" but that Mr. Barnes engaged in "physical therapy and Robert Lang M.D., indicated that the claimant was

able to perform light duty work." *Id.* And finally the ALJ acknowledged Mr. Barnes' claim of right leg pain but observed that exam findings showed Mr. Barnes could perform normal heel to toe walking, had normal strength, had negative straight leg raise and was encouraged to continue physical therapy and get more physical activity. *Id.* In short, the ALJ's step two error is harmless because the ALJ clearly discussed radiating leg pain in reviewing the medical evidence, and assessing his limitations.

**B.     Mr. Barnes' Testimony**

The ALJ did not find malingering and was therefore required to provide clear and convincing reasons to reject Mr. Barnes' testimony. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996). Mr. Barnes contends the ALJ erred in rejecting his testimony. The Commissioner disagrees and argues the ALJ gave three valid reasons to reject Mr. Barnes' testimony. The Commissioner argues the ALJ properly rejected Mr. Barnes' testimony because he did not seek treatment for depression until just before hearing. Dkt. 12 at 4 (citing Tr. 16). The Court rejects the argument. The ALJ erred because a claimant with a mental impairment should not be chastised for exercising poor judgment in seeking rehabilitation. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.1996). Mr. Barnes' lack of or late treatment for mental health problems is not a valid legal basis to discount his testimony.

The Commissioner next argues the ALJ properly rejected Mr. Barnes' testimony on the grounds that is inconsistent with his daily activities. Dkt. 12 at 4. The ALJ found Mr. Barnes can live an independent lifestyle, prepare meals, fold laundry, drive, buy groceries and care for his daughter. Tr. 16. However, the records the ALJ relied upon show Mr. Barnes "sometimes" can prepare food but that his wife cooks all meals for him; that he "sometimes helps with the kids and sometimes with laundry just folding," Tr. 229; and that he goes out one to two days a week

and can shop for one to two hours. Tr. 230. The ALJ erred in relying on these minimal activities to reject Mr. Barnes' testimony because the ALJ may not penalize a claimant for attempting to live a normal life in the face of his limitations. *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Additionally, none of the activities mentioned by the ALJ are transferrable to a work setting and none specifically contradict anything Mr. Barnes said. The ALJ accordingly erred in rejecting Mr. Barnes' testimony as inconsistent with certain daily activities.

And finally, the Commissioner argues the ALJ properly rejected Mr. Barnes' testimony on the grounds Mr. Barnes made inconsistent statements about his ability to drive. Dkt. 12 at 4 (citing Tr. 16.). The ALJ's decision notes in 2011 Mr. Barnes indicated "he could drive"; that in December 2013 he indicated "he did not drive," and in 2015 he testified at the hearing "he was able to drive." Tr. 16. The ALJ found "such inconsistencies and contradictions erode the claimant's allegations." *Id*. The finding is not supported by substantial evidence.

In 2011 and 2013 Mr. Barnes completed a form that asked: "When going out how do you travel?" "Do you drive?" Tr. 43, 222. In 2011 Mr. Barnes indicated when he travels, he "drive[s] a car." He also checked "yes' to the question "do you drive." Tr. 43. In December 2013, Mr. Barnes indicated when he travels, he "ride[s] in a car." He checked "no' to the question "do you drive." However, he noted the reason he did not drive was: "sold my car before surgery because my leg was hard to move the clutch." Tr. 222.

There is no inconsistency between Mr. Barnes' 2011 and 2013 statements. In 2011 Mr. Barnes stated he drove himself. This is not inconsistent with his December 2013 statement that he stopped driving himself after his November 2013 laminectomy, formainotomy and discectomy made it hard to move the clutch. Tr. 15. The 2011 and 2013 statements are also not inconsistent with Mr. Barnes' 2015 statement. In 2015, the ALJ asked Mr. Barnes whether he

still drove. Mr. Barnes testified "occasionally." Tr. 55. This statement is not inconsistent with Mr. Barnes' earlier statements. In December 2013 he said he stopped driving because his November 2013 surgeries made it hard to operate the clutch. But, he never stated the surgeries permanently prevented him from driving, or that his physical condition in 2015 was as bad as immediately after the 2013 surgery. The ALJ's conclusion that the 2015 and 2013 statements are inconsistent are thus based upon an assumption not supported by facts contained in the record. Of course the Court would uphold the ALJ's finding if it were supported by inferences drawn from the record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.2008). But here, there is no basis to infer that the 2013 surgery left Mr. Barnes permanently unable to drive. To the contrary, the record sets forth a chronology of events supporting the opposite conclusion: that Mr. Barnes went from driving in 2011; not driving in December 2013 a month after surgery; to limited or occasional driving in 2015, 18 months after the 2013 surgery.

The Court notes the ALJ provided other reasons which the Commissioner does not defend or argue are valid. The ALJ found the medical evidence does not support Mr. Barnes' testimony. Tr. 14. The ALJ first pointed to medical findings showing Mr. Barnes is obese. Obesity or failure to follow treatment for obesity says "little or nothing about a claimant's credibility." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

The ALJ also pointed to certain medical opinions regarding Mr. Barnes' physical limitations that showed he can perform light work, and that despite back problems and radiating leg pain, he could perform normal heel and toe walking. Tr. 15. But the ALJ erred by failing to discuss how or why these findings contradict Mr. Barnes' testimony. Generalized, conclusory findings do not suffice. *See Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir.2004) (the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ

rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.").

And finally the ALJ found the medical evidence undercut Mr. Barnes' testimony about his mental limitations. The ALJ noted Blakely Warner, Psy.D. performed a mental status exam showing Mr. Barnes was oriented, could recall two of three objects after five minutes, do simple calculations, perform three-step commands and spell World forward and backwards. Tr. 15. But Mr. Barnes never claimed he lacked these cognitive skills. Rather as noted by Dr. Warner, Mr. Barnes "reported problems with motivation and increased irritability." *Id.* Substantial evidence does not support the finding that Dr. Warner's opinion undercuts Mr. Barnes' testimony.

The ALJ noted Alicia Jorgeson, M.D., also found Mr. Barnes could perform digit span tests, do simple calculations, and follow three-step commands. But these findings do not contradict Mr. Barnes' statements to the doctor that his "primary complaints were pain, depression, and anxiety." Tr. 16. The Court notes the ALJ found that although Mr. Barnes was diagnosed with depression he was fully oriented, able to follow a three step task and interact appropriately with his examiners. *Id.* This is an unsupported and unreasonable conclusory statement.  There is no evidence that Mr. Barnes made statements that are contradicted by his ability to follow a three step task, interact appropriately with his examiners, or be fully oriented. Additionally there is no evidence that shows that Mr. Barnes' depression diagnosis is contradicted by his ability to follow a three step task, interact appropriately with his examiners, or be fully oriented. Indeed, if this were the case, the ALJ would have found depression is not a "severe impairment' at step two, instead of finding it is a severe impairment.

The Court concludes the ALJ failed to provide clear and convincing reasons supported by substantial evidence to reject Mr. Barnes' testimony and thus harmfully erred.

C.  **Medical Opinion of Robert Lang, M.D.**

Mr. Barnes contends the ALJ erred by not addressing the opinions of treating doctor, Robert Lang, M.D. Dkt. 11 at 13-16. The Commissioner claims the contention is "not accurate" because "the ALJ discussed Dr. Lang's opinion that Plaintiff could perform light duty work." Dkt. 12 at 5. The Commissioner overstates the ALJ's discussion of Dr. Lang's opinions. In discussing what weight Mr. Barnes' testimony should be given, the ALJ noted "the claimant engaged in physical therapy and Robert Lang, M.D. indicated that the claimant was able to perform light duty work." Tr. 15. But other than this passing reference to Dr. Lang, the ALJ did not "discuss" Dr. Lang's findings, and specifically omitted any discussion of Dr. Lang in the portion of the decision addressing the medical "opinion evidence." *See* Tr. 17-18. The record thus shows the ALJ erred by failing to provide specific and legitimate or clear and convincing reasons to reject Dr. Lang's opinions.

The ALJ's error is harmful if the ALJ's RFC determination fails to account for all limitations found by Dr. Lang. The Commissioner contends the ALJ accounted for all limitations found by Dr. Lang, and the Court should thus affirm the ALJ. Dkt. 12 at 5-6. In specific, the Commissioner argues Dr. Lang opined that Mr. Barnes could lift and carry 20 pounds occasionally and 10 pounds frequently which is "synonymous with light work." Dkt. 12 at 5. The record does not support the Commissioner's argument. Dr. Barnes noted lifting and carrying restrictions eight times. Five times, he noted Mr. Barnes was limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently. Tr. 658, 715, 716, 719, and 720. However, three times he noted Mr. Barnes was limited to lifting and carrying 10 pounds occasionally and 5 pounds frequently. Tr. 671, 681, and 693.

Because the ALJ failed to address these opinions, the Court must be "cautious about when harmless error should be found." *Marsh v. Colvin,* 792 F.3d 1170, 1173 (9th Cir. 2015). The Court cannot make factual determinations, in the first instance, or speculate as to the grounds for the ALJ's conclusions. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). But this is what the Court would have to do to find harmless error. The Court would have to weigh, in the first instance, whether the two different sets of lifting and carrying limitations establish Mr. Barnes is limited to light work, or less than light work, or whether further development of the record is needed to make that call. In short the record does not allow the Court to "confidently conclude" the ALJ's failure to address Dr. Lang's opinions of Mr. Barnes' lifting and carrying limitations is harmless. *Marsh v. Colvin,* 792 F.3d at 1173. The Court accordingly finds the ALJ harmfully erred in failing to fully address Dr. Lang's opinions.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ shall reassess Mr. Barnes' testimony and Dr. Lang's opinions. The ALJ should develop the record and reassess Mr. Barnes' RFC s needed, and proceed to step five as appropriate.

A proposed order accompanies this Report and Recommendation. Any objection to this Report and Recommendation must be filed and served no later than **August 21, 2017.** If no objections are filed, the Clerk shall note the matter for August 25, 2017, as ready for the Court's consideration. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14

REPORT AND RECOMMENDATION - 9

days from the date the objection is filed and served. Objections and responses shall not exceed eight pages. The failure to timely object may affect the right to appeal.

DATED this 7th day of August, 2017.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 10